SAFE HARBOR RETENTION AGREEMENT BY WALLIS JAMES & JANE LARSON WINEGAR,
Page 1

Safe Harbor Associates, LLC
452 Horse Thief Lane
Durango, CO 81301
817-821-7335

August 1, 2013

Mr. Wallis James Winegar
Mrs. Jane Larson Winegar
3952 PR 2718
Aubrey, Texas 76227

Subject: Retention of Safe Harbor Associates, LLC as Financial Advisor

Dear Mr. and Mrs. Winegar:

Thank you for the confidence you have placed in Safe Harbor Associates, LLC ("Safe Harbor"). We are pleased to set forth the terms of the engagement of Safe Harbor by your chapter 11 bankruptcy estate (hereinafter "Client", "Winegar", or the "Debtor").

1) *Retention and Effective Date:*

   a) This Agreement shall become effective upon execution by both parties and receipt of the retainer wire in the amount of $7,500.

   b) It is understood that Winegar has filed a petition for relief pursuant to Title 11 of the United States Code (the "Bankruptcy Code") as a Chapter 11 debtor-in-possession in the U.S. Bankruptcy Court for the Northern District of Texas, Fort Worth Division (the "Court") styled 12-43242-dml-11, and that this proposed agreement (the "Agreement") is subject to approval of the Court;

   c) The Debtor shall seek the Court's approval to ratify the Agreement as a professional person in accordance with Section 327(a) of the Bankruptcy Code;

2) *Description of Services:*

   a) Assist Winegar in the development and validation of its business plan, financial projections, liquidation analysis, and rolling thirteen week cash flow budgets and associated cash management, disbursement, and reporting processes;

   b) Assist Winegar in its reporting of performance pursuant to applicable debtor-in-possession financing, cash collateral, or other orders entered by the Court;

   c) Assist Winegar in its contacts and communications with its creditors and other parties at interest with respect to the Debtors' financial, operational, and reorganization matters;

   d) Assist Winegar in the preparation of its Plan of Reorganization, Disclosure Statement and associated financial projections;

   e) Perform such other services in connection with the reorganization of the Debtor and the preparation of the Debtors' proposed Plan of Reorganization as may be reasonably necessary to advance the Debtors' reorganization efforts under Chapter 11 and the preparation, confirmation and consummation of its Plan of Reorganization;


EXHIBIT 1

**SAFE HARBOR RETENTION AGREEMENT BY WALLIS JAMES & JANE LARSON WINEGAR,**
Page 2

    f) Provide such Court testimony as may be required as to the value of the Debtors' assets, strategic and reorganization alternatives, operating performance, and in support of the Plan of Reorganization and other motions;

    g) Provide such other services as shall be mutually agreeable and requested by Winegar.

3) *Independent Contractor: Oversight of Engagement; No Fiduciary Relationship.* Safe Harbor is an independent contractor, and no employee or agent of Safe Harbor is an employee of the Winegar. Nothing in this Agreement is intended to create, shall be construed as creating or be deemed to create a fiduciary relationship between Safe Harbor and Winegar. Safe Harbor shall report to the Managing Member or its' written designee (s) as the representative of Winegar with respect to Safe Harbor's engagement under this Agreement.

4) *Information; Access:* Winegar agrees to provide Safe Harbor access on a timely basis to all information and personnel requested by Safe Harbor necessary for Safe Harbor to perform its engagement under this Agreement, including, to the extent relevant, books, records, financial plans and operating policies and procedures of Winegar' business enterprise that is the subject of Safe Harbor's engagement under this Agreement. Winegar acknowledges that, in rendering its services hereunder, Safe Harbor will be using and relying on the information (and information which may be available from public sources and other sources deemed reliable by Safe Harbor) without independent verification thereof by Safe Harbor or independent appraisal by Safe Harbor of any of the Winegar assets. Safe Harbor does not assume responsibility for the accuracy or completeness of the information or any other information regarding the Company.

5) <u>Projections; Reliance; Limitation of Duties</u>. You understand that the services to be rendered by Safe Harbor may include the preparation of projections and other forward-looking statements, and that numerous factors can affect the actual results of Winegar' operations, which may materially and adversely differ from those projections and other forward-looking statements. In addition, Safe Harbor will be relying on information provided by Debtor in the preparation of those projections and other forward-looking statements. Safe Harbor makes no representation or guarantee that an appropriate Plan of Reorganization, restructuring proposal or strategic alternative can be formulated for the Debtor, that any Plan of Reorganization, restructuring proposal or strategic alternative presented to the Board will be more successful than all other possible Plan of Reorganization, restructuring proposals or strategic alternatives, that any proposed Plan of Reorganization, restructuring plan or strategic alternative will be accepted by any of the Debtors' creditors, shareholders or other constituents. Further, Safe Harbor assumes no responsibility for the selection of any Plan of Reorganization, restructuring proposal or strategic alternative that Safe Harbor assists in formulating and presenting to the Board.

6) *Compensation:* Safe Harbor shall be compensated for its professional services and reimbursable expenses under this Agreement as set forth below.

    a) Safe Harbor's standard rates normally charged for Managing Directors are $250 - $350 per hour. Due to the circumstances of this Engagement, Safe Harbor will be paid by Winegar for the services of its personnel on an hourly basis as follows:

| <u>Title</u> | <u>Safe Harbor Professional</u> | <u>Hourly Rate</u> |
|---|---|---|
| Managing Director | Anthony F. Wolf | $225 |
| Managing Director | Michael F.G. Williams | $225 |

    b) A retainer of $7,500 is required by same day wire transfer upon the Execution and Court Approval of the Agreement, subject of course to the approval of the Court, with funds to be wired to the Wells Fargo, NA account set forth in 6 (f).

    c) Safe Harbor professionals shall keep track of their time on a tenth of an hour basis and in accordance with U.S. Trustee reporting requirements as applicable;

d) Reimbursable expenses include: costs of travel and travel related expenses; printing and reproduction; long-distance communications (including facsimile); overnight and other delivery services. Any air travel expenses shall be limited to the cost of prevailing coach based commercial air service. Services of other third parties consulted or engaged by Safe Harbor to assist it under this Agreement shall be reimbursable expenses provided that such consultation or engagement has been approved by Winegar;

e) Compensation of Safe Harbor fees and expenses during the pendency of a bankruptcy shall be subject to the requirements and procedures of 11 U.S.C. § 330 for compensation of professional persons, subject to the provisions for interim compensation provided by the Court's order applicable to other professional persons retained in this case. Safe Harbor will file monthly or quarterly fee applications in accordance with the interim compensation and final compensation procedures set forth by the Court;

f) Please make payments by wire to the address below;

> Wells Fargo Bank, NA
> 200 West College Drive
> Durango, CO 81301
> ABA: 121000248
> For account: Safe Harbor
> Beneficiary Account Number: 3138107440

7) *Testimony.* If Safe Harbor is required to provide testimony after the conclusion of this engagement, Winegar agrees to pay Safe Harbor a fee at Safe Harbor's then prevailing hourly rates for witness preparation and court appearances, in addition to the fees and expenses of outside counsel retained by Safe Harbor to advise in connection with such testimony and other reimbursable expenses incurred by Safe Harbor in connection with the testimony.

8) *Use of Name and Work Product.* Winegar acknowledges that all information (written or oral) generated by Safe Harbor in connection with its engagement is intended solely for benefit and use of Winegar. Without limiting the foregoing, the Winegar shall not, and shall not authorize anyone else to, make available to third parties (other than Winegar' lenders, investors investment bankers, and, if in a Chapter 11 proceeding, the U.S. Bankruptcy Court and other parties at interest) any written materials (including extracts or excerpts therefrom or abstracts thereof) or other written work product prepared by Safe Harbor pursuant to this Agreement without Safe Harbor's prior written consent, which shall not be unreasonably withheld, except as required by law or other valid legal process and with advance notice to Safe Harbor.

9) *Standard of Care and Warranty Disclaimer.* Safe Harbor performs its services in accordance with standards of skill and care generally observed by other professional firms of recognized national standing in the United States rendering comparable services. If Safe Harbor fails to meet such standards the sole remedy of Winegar shall be to terminate this Agreement and recover any direct damages Winegar may prove, but not to exceed the amount previously paid to Safe Harbor. Neither Safe Harbor nor any Safe Harbor Party (as defined below) shall be liable for any lost or loss of profits, any indirect, incidental or consequential damages, or any claim, loss or expense for which indemnification would be provided under Section 10 of this Agreement. In performing its services under this Agreement Safe Harbor is not assuming and Winegar is not seeking Safe Harbor to undertake any responsibility for Winegar's decision to pursue or not to pursue any business strategy or to effect or not to effect any restructuring, business combination, refinancing or other transaction, nor shall Safe Harbor be responsible for providing any tax, legal or other specialist advice. Safe Harbor makes no representations or warranties, express or implied, concerning the value of its services or the results that may be obtained therefrom. Safe Harbor's engagement shall not constitute an audit, review, compilation or any other type of financial statement reporting or consulting engagement that is subject to the rules of the AICPA or other state and national professional bodies.

10) *Limitation of Liability and Indemnity.*

   a) Safe Harbor's sole obligation under this Agreement is to Winegar, and any advice (written or oral) given by Safe Harbor to Winegar in connection with Safe Harbor's engagement under this Agreement is solely for the use and benefit of Winegar. In no event, regardless of the legal theory advanced, shall any Safe Harbor Party be liable to Winegar other than for gross negligence, willful misconduct or to any third party. The obligations of Safe Harbor are solely corporate obligations, and no officer, director, employee, agent, shareholder or controlling person of Safe Harbor shall be subject to any personal liability whatsoever to any person, nor will any such claim be asserted by Winegar, whether on its own behalf or on behalf of any other person. ANY RIGHT TO A TRIAL BY JURY WITH RESPECT TO ANY LAWSUIT, CLAIM OR OTHER DISPUTE ARISING OUT OF OR RELATED TO THIS AGREEMENT OR THE SERVICES TO BE RENDERED HEREUNDER IS HEREBY EXPRESSLY WAIVED BY Safe Harbor AND Winegar..

   b) Winegar shall indemnify, defend and hold harmless Safe Harbor, its successors, affiliates, subcontractors, and assigns, their respective current, past, present future employees, owners, agents, independent contractors or other representatives and their respective successors and assigns, (collectively, the "Safe Harbor Parties") against any and all claims, costs, demands, damages, assessments, actions, losses, costs, suits or other proceedings, liabilities, judgments, penalties, fines or amounts paid in satisfaction of any judgment or settlement (collectively, "Claims"), and all expenses, and attorneys fees (whether incurred at the trial or appellate level, in an arbitration, in bankruptcy (including, without limitation, any adversary proceeding, contested matter or application) incurred in defense, investigation or resolution of Claims or otherwise, arising out of, connected with or related to the services performed under this Agreement, whether or not such Claims are attributable in whole or in part to negligence by Safe Harbor, other than Claims that are finally determined by final judgment or in binding arbitration award to have resulted from acts by Safe Harbor that involve gross negligence, or willful misconduct. Safe Harbor shall give prompt written notice to Winegar of any Claim for which indemnification may be claimed hereunder, and the parties shall then cooperate as reasonably required to defend such Claim; provided, that the right of the Safe Harbor Parties to indemnification shall not be affected by any failure or delay by Safe Harbor to give such notice, except to the extent that the rights and remedies of the indemnifying party shall have been materially prejudiced as a result of such failure or delay. Winegar agrees that, without Safe Harbor's prior written consent (which will not be unreasonably withheld), Winegar will not settle, compromise or consent to the entry of any judgment in any pending or threatened Claim, or other proceeding or investigation in respect of which indemnification or contribution could be sought hereunder (whether or not Safe Harbor or any other Safe Harbor Party are an actual or potential party to such Claim or proceeding or investigation), unless such settlement, compromise or consent includes an unconditional release of each Safe Harbor Party from all liability arising out of such claim, action or proceeding or investigation.

   In no event shall Safe Harbor's liability exceed the total of professional fees to it paid by Winegar.

11) *Confidentiality.*

   a) All information disclosed to Safe Harbor by Winegar in connection with Safe Harbor's engagement under this Agreement, including without limitation information acquired from the Company's employees or inspection of the Company's property, and confidential information disclosed to Safe Harbor by third parties representing or acting for or on behalf of Winegar, shall be considered Confidential Information. Confidential Information shall not include information which (a) is now or subsequently becomes generally known or available by publication, commercial or otherwise, through no fault of the Safe Harbor, (b) is known by Safe Harbor at the time of the disclosure, (c) is independently developed by Safe Harbor without the use of any

**SAFE HARBOR RETENTION AGREEMENT BY WALLIS JAMES & JANE LARSON WINEGAR,**
Page 5

Confidential Information, (d) is information that the parties agree in writing may be disclosed by Safe Harbor, (e) is or becomes available to Safe Harbor on a non-confidential basis from a source other than the Winegar, provided that, to Safe Harbor 's knowledge, such source was not prohibited from disclosing such information to Safe Harbor by a legal, contractual or fiduciary obligation owed to Winegar or (f) is information that must be disclosed pursuant to applicable law or legal, regulatory, or administrative process after compliance with the provisions hereof.

b) Safe Harbor shall keep all Confidential Information confidential and shall use the Confidential Information solely for purpose of providing the services to be furnished pursuant to this Agreement. Safe Harbor may make reasonable disclosures of Confidential Information to third parties in connection with the performance of its engagement under this Agreement and in connection with any dispute between Safe Harbor and Winegar under or concerning this Agreement, and Safe Harbor will have the right to disclose to others in the normal course of business its involvement with Winegar. Any written information produced by Safe Harbor shall be treated as Confidential Information, shall be delivered solely to Winegar and, except as required by law or legal process, shall not be provided to any third party (other than Winegar' lenders, investors and investment bankers) without Winegar' consent.

c) If Safe Harbor receives any request (by order, subpoena or other legal process) to produce any Confidential Information, Safe Harbor will, unless prohibited by law or process, use its best efforts to provide Winegar with timely notice of such request and, at Winegar' request and expense, cooperate with Winegar in any action Winegar deems necessary or appropriate under the circumstances to protect the confidentiality of the Confidential Information.

12) *Termination.* Safe Harbor's engagement may be terminated at any time by Winegar, and Safe Harbor may terminate its engagement at any time, in each case by written notice and without liability or continuing obligation to Winegar or Safe Harbor, except that following such termination Safe Harbor shall remain entitled to any compensation accrued, but not yet paid prior to termination and to reimbursement of expenses incurred prior to termination. All provisions of this Agreement, other than Sections 1 and 6 shall survive termination of Safe Harbor's engagement under this Agreement.

13) *Modification.* No modification, amendment or addition to or waiver of any provisions of this Agreement shall be valid or enforceable unless in writing and signed by all parties, in a document specifically stating it is amending this Agreement.

14) *Legal Construction/Severability.* The validity, interpretation and enforceability of this Agreement shall be determined in accordance with the substantive laws of the State of Texas, exclusive of choice of law provisions. If any provisions of this Agreement shall for any reason be held by a court of competent jurisdiction to be invalid, illegal, or unenforceable in any respect, such invalidity, illegality or unenforceability shall not affect any other provision hereof, and this Agreement shall be construed as if such invalid, illegal, or unenforceable provision had never been contained herein and to give effect as nearly as possible to the intent of the parties. This Agreement is the product of negotiations between the parties in which each has had the opportunity to be advised by counsel of its choosing, and therefore the rule of construction that an agreement is construed against the drafter thereof shall not be applicable to this Agreement.

15) *Succession and Assignment:* Safe Harbor may freely assign, delegate or transfer, in whole or in part this Agreement and the respective rights and obligations under this Agreement to any of its affiliates or successors in interest, provided that approval of the Court shall be sought if necessary. The Debtor may not assign its rights and obligations under this agreement without the prior written consent of Safe Harbor. In the event of a sale of the Debtors' assets, or any substantial portion thereof, the Debtor may not, without the prior written consent of Safe Harbor, enter into any agreement which revises, amends, modifies, alters or terminates this Agreement. This Agreement shall be binding upon and inure to the benefit of the Parties and their successors and permitted transferees.

16) *No Third Party Benefit.* This Agreement is made solely for the benefit of the parties hereto, and no third party shall acquire any claim against any Safe Harbor Party as a result of this Agreement except to the extent expressly set forth herein for the benefit of the Safe Harbor Parties.

17) *Notices.* All notices under or concerning this Agreement shall be in writing, may be given by personal delivery, overnight delivery service or United States mail, shall be effective only upon actual receipt, and shall be delivered to the party receiving notice at the addresses set below.

18) *General Provisions.* This Agreement shall be binding on the parties and their respective successors and assigns, but neither party may assign any benefit or delegate any duty under this Agreement, voluntarily or by operation of law, without the written consent of the other party. This Agreement constitutes the parties' entire agreement with respect to its subject matter and is intended to supersede all prior negotiations, discussions and agreement and fully to integrate the parties' agreement. This Agreement may be executed by facsimile and in any number of counterparts, each of which shall constitute an original and all of which shall constitute one agreement. The obligations of Safe Harbor hereunder are solely corporate and not individual to any person.

We appreciate the trust you have placed in Safe Harbor and look forward to completing this engagement.

Sincerely,

*[signature]*

Safe Harbor Associates, LLC.
452 Horse Thief Lane
Durango, CO 81301
Anthony F. Wolf, Managing Director

SAFE HARBOR RETENTION AGREEMENT BY WALLIS JAMES & JANE LARSON WINEGAR,
Page 7

AGREED TO AND ACCEPTED, as of August 1, 2013 by:

**WALLIS JAMES & JANE LARSON WINEGAR**

Wallis James Winegar: *[signature]*

Jane Larson Winegar: *[signature]*

**SAFE HARBOR ASSOCIATES, LLC, a Texas Corporation**

By: *[signature]*

Its: MANAGING MEMBER

Date: 8-01-2013